Case No. 21-1270, Ingres Center for Biological Diversity and Center for Food Safety Petitioners, Ms. Parent for the Petitioners, Ms. Cachette for the Respondents, Mr. Lorenzen for the Interveners. Good morning, Your Honors. May it please the Court, Stephanie Parent on behalf of Petitioners. Over five years ago, this Court held that the Environmental Protection Agency violated its clear and mandatory duty to comply with the Endangered Species Act before registering the insecticide cyanotroniloprol. The Court issued a remand order to the EPA to act consistent with that opinion. When petitioners filed the petition four and a half years into the remand order, there was uncontroverted evidence that the EPA had not taken any action to comply with this Court's remand order. And we provided that through declarations filed in other courts and records that were responsive to several FOIA requests that petitioners submitted to the EPA. Rather than taking action to comply with the Court's remand order in the Endangered Species Act, the EPA simply ignored it. In response to this petition, as expected, EPA is now estimating that it can complete a biological evaluation for the effects of the analysis that it should have done before registering cyanotroniloprol by September 2023. This Court should find, under the familiar track factors, that EPA has unreasonably delayed complying with both this Court's remand order, for now five years, and the Endangered Species Act duty, which attached eight years ago. You want us to give them just six months, right? Isn't that what you say in your brief? We should order them to comply within six months? That was our original request, Your Honor, at this point in time, given that it's now September 2022. Wait, but was that your request in the... Yes, Your Honor. And in our reply brief, we said at a minimum, no later than September 2023. Well, that's exactly the date the agency has proposed, right? That's correct, but the agency had not made any proposal prior to the filing of the petition. So what we have before us now is you seem to be in agreement that September, and the agency says it's, quote, committed to that. So I realize there's some other issues about do we actually issue a mandating disorder, what do we do about conditional vacancy, things like that. But just in terms of the date, you two sides seem to think that that's a pretty good date. The two sides seem to think... September 2023 is a good date. Correct. So you're okay. I think all parties would agree that if the court issues an order, a court enforceable deadline, September 2023 is appropriate. So then is the only difference between you and EPA here that you want us to actually enter a mandating disorder and they don't? Correct, Your Honor. And there are several reasons for that. I want to point out why a court enforceable deadline is still necessary here. First of all... I'm sorry, why, what is still necessary? A court enforceable order by September 2023. And would you, when you talk about it, separate entering a mandamus order requiring compliance in September 2023 and doing that plus, I think, what you call conditional vacature. Can you separate the two of them? Yes, Your Honor. When we filed the petition, when petitioners filed the petition last December, I believe it was, after researching the cases in this circuit, we presented a menu of all the ways that courts have remedied an unreasonable delay. And that included the primary and usual one. And what petitioners are really pushing for here is that court enforceable deadline. Is what? The court enforceable deadline of September 2023. That's what you really care about. Yes, Your Honor. That's clear from your brief. Yes, Your Honor. And a mandamus would do that, right? Yes, Your Honor. So as far as you're concerned, then, you know, I don't want you to go beyond what you want to, but I ask the question because, you know, it seems to me that from your point of view, mandamus with a September date is what you need. You know, you're not you're not arguing about. Yes, you're not insisting on conditional vacature. No, Your Honor. OK, great. The situation really has changed from when we filed the petition to this. The fact that CBD is not seeking vacature here at all or even apparently conditional vacature, doesn't that suggest that the conditions for extraordinary relief of mandamus are not met? I mean, so your your argument is not that this chemical is harming an endangered species or that it's continued registration is harmful to the environment. I mean, in those circumstances, why is extraordinary relief necessary from this court? If I may, Your Honor, first of all, this situation is somewhat different than most of the court's unreasonable delay cases because it is violating the remand order, which effectively nullifies the court's order as the court held it in rate court communications in 2008. And that. Well, I say I agree with that, right. I mean, the EPA is in violation of our remand order. They haven't implied they're in violation of the statute. I think everybody agrees with that. And it seems the parties agree as to that. But but, you know, even if there is a clear duty to act in order to respond to the to our remand decision, we still have to determine that our discretion is properly ordered, you know, is properly exercised to order mandates. And in a case where, you know, there's no vacature sought. I mean, the other cases, you know, in our circuit where someone is seeking this type of relief, you know, they are being a rule is being enforced against them or some, you know, some other legal obligation is being imposed on them for, you know, an extensive period of time. And here CBD is not seeking deregistration of CTP and doesn't seem to even envision that after the ESA process is completed, that this chemical will be deregistered. So I guess I'm not sure where the urgency comes from in terms of of our jumping into this to require a time. That's right. I will try to cover all of that. But essentially, we need to go through or the court needs to assess under all the track factors in order to weigh and balance whether the weather is appropriate for mandating this issue. And what I want to answer first, under track factor five, which is often evaluated with track factor three, we are limiting harm to species by this continued use of cyanotroniloprol. What is likely to happen, first of all, I want to emphasize, too, that the the analysis that EPA estimates it will complete in September 2023 is just the first step of the process. It will not necessarily result in deregulation or taking cyanotroniloprol off the market. A more likely result is that additional mitigation will be put in place once EPA has made that assessment, either through its own process, which will happen after September 2023, or if they find any species likely to be adversely affected by the use of cyanotroniloprol, they'll have to initiate formal consultation with the services. So this is just the first step of the process, so there is some urgency there. Moreover, under track factor five, the nature and extent of the interests that are being prejudiced, the agency back in 2013 in its ecological risk assessment concluded that there was potential for direct adverse effects on mammals and aquatic and terrestrial invertebrates, like Mitchell's satire butterfly. It also found or concluded that there would be indirect effects on all types of species that rely upon those invertebrates. Well, it's true, but the reason this court gave in our remand order for leaving the registration in place for not vacating it was that it was at least relatively beneficial to the environment to leave the registration in place. And that does not seem to have changed in 2022. It doesn't seem that either party, neither the government nor CBD, is arguing that it is more beneficial to keep CTP registered than to unregister.  What we have here, I understand the decision and the basis for it back in 2017. What we have here is another passage of five years where cyanotroniloprol is being used, and the agency has simply been derelict in not taking any action. You're not suggesting that CTP shouldn't be used, right? I think this would be a very different case if you were saying, you know, the continued use of this chemical is harming endangered species, and every year that this goes on and the EPA fails to meet its statutory obligations, you know, there's harm to species. But that's not really… We do realize that there's potential harm to species, which the EPA concluded in 2013. But it's not a harm that can be addressed apparently by deregistering CTP, right? What usually happens, consultation, endangered species consultation, does not usually result in an action not moving forward. What it does is put in place mitigation to ensure that the species, which EPA has not looked at specifically yet for cyanotroniloprol, are provided sufficient protection so that they aren't… their very existence isn't jeopardized by the agency action. So what you want is not just continued use of CTP as is, what you want is continued… you don't object to continued use of CTP if appropriate conditions and modifications have been imposed, which is why you want this process to identify the start. I thought what you want… can I modify that just slightly? I thought what you wanted was the agency to make the effects determination one way or the other, right? Yes. That's all you want. That's what they were required to do under our previous order, right? Correct. You want the agency to be ordered to make that decision one way or the other, right? Yes, Your Honor. And then what comes from that is an unknown right now because the agency hasn't undertaken its duty. Yeah. And, for example, once the agency does undertake its duty, for example, in another insecticide, malathion, which admittedly is not the same as cyanotroniloprol, the conclusion was that without additional mitigation, and this didn't ban or deregulate malathion, but without sufficient mitigation, 78 species were threatened with extinction. You don't disconnect. I'm just trying to understand because if all you want is them to do an effects determination, I don't see how that even would redress the injuries that you've asserted. They each piece of paper going, oh, yeah, it has an effect. The only thing that redresses the injuries you've asserted here is them going forward with the process, which I assume in your view there's no question that there will be effects. That's what they say. In your preliminary determination, yes. I assume your clients have their own view on this apart from their preliminary determination, but that there are going to have to be modifications or conditions. Yes, which is why it's so important to have a court-enforceable deadline of September 2023 to get this process going. I'm sorry. You're telling us now to argue that you don't even want conditional vacature because your reply brief after they identified the September 2023 deadline still expressly argued for conditional vacature. Yes, Your Honor. You're abandoning that now here. Sorry? You're abandoning that request here? We think that given that the EPA has now provided prioritization and that it is estimates it can do by 2023, the court order is sufficient motivation. Why do you need a court order at all at this point? If EPA, if you're willing to take EPA's word about September 2023, if they miss September 2023, you bring a writ of mandamus with them. I mean, you know, why, what is the benefit to just, you know, judicial supervision of the executive branch in this context? Well, the court order deadline is still, court-enforceable deadline is still necessary for several reasons. First, EPA in its brief makes a lot of hay about the fact that it's in this sworn declaration and that EPA is committed. But if you look at the declaration itself, it actually says, and this is the Matuska declaration at paragraph 27, it's not a firm commitment. EPA estimates that it will complete the effects evaluation by September 2023. I thought he used the word committed. Doesn't she use the word committed? I wrote that down. I was going to ask her what committed means. Conditional vacator. It's committed. Isn't that in the affidavit? It's in the briefing, Your Honor, paragraph 27. But not the affidavit? No, it's in the declaration. That's what I meant, the declaration. Paragraph 25 says EPA is committed. Yes, it's committed. But then it drops a footnote that says some dates may change. Yeah, right. So they're committed to that unless they aren't. Yeah. And that it anticipates a draft in February of 2023. And I want to point out that simply because EPA has declared something or submitted a declaration, we filed a 28-J letter informing the court that in a different pesticide case concerning sulfoxaflora in the Ninth Circuit, EPA also made estimates and missed those deadlines because there was no court order in place. So then why aren't you seeking conditional vacator then? Like if you're not confident that EPA will meet its deadline, you don't want a court ‑‑ I mean, I'm not sure what you want us to do here. Well, the other reason that the court order deadline is important here is so after, I think it was April of this year, EPA produced its work plan. And at page 41 of that work plan, it said, quote, the top priority is for existing and future court enforceable deadlines. And so right now without a court order, those deadlines are going to slip. Now, they have in the work plan, they placed cyanotronic parole sort of at the bottom of the pile of all the cases where they already have court enforceable deadlines. So given that it's their top priority, only if it's in a court enforceable order, whether existing or future, means that the court's order carries much heavier weight than it did before EPA issued this work plan and committed to making its top priority court enforceable deadlines. I'm sorry, were you done with that? I have two questions. One is factual and takes us outside the record, but the risk assessment was a couple years ago, right? What do we know about CTP today? Is there any more evidence out there about the potential impact of CTP on endangered species? What do we know about it? In the Brett Hartle declaration, we brought forward two studies that continue to show that it's harmful to aquatic species. Which was those? Which species? Was that tilapia? Sorry, your honor, I don't. I think I saw that, but I don't think the ones in there are endangered. I could be wrong, but I think they're not. Correct, but it is. I'm specifically asking you about whether there's more recent evidence about the effect of this on. Well, it's two questions. One, the effect of this on CTP on endangered species. And I guess the other question is, what about, I mean, if in the end the agency deregisters it, are the alternatives more dangerous to endangered species? That concern is what was underlying the original panel. And actually, you're brief also. You recognize that, right? Yes, your honor. And so if you're weighing and balancing, the court order deadline is appropriate. It won't affect the use of cyanotroniloprol at least for the next year. But at that point in time, we will know which species the EPA assesses are being adversely affected. Okay. Second question is a legal one. There's some suggestion in our case, though, I think, that in a case like this where you have an agency that is violating the directives of both other branches of government, Congress and the courts, that the track factors are less demanding. What do you think about that? I would agree, your honor. And that's what the court explained in 2008 Inuit Communications. And in Inuit People's Mohajedin Organization of Iran, there the court said that it was, quote, decisive that the agency failed to meet a statutory deadline and, quote, our remand order. So I would agree that that is an important factor here. We still do need to analyze the track factors. And I just want to say as to the development of the work plan and the commitment, EPA's statement that it will make its top priority to comply with existing and future deadlines, I think that eliminates, that makes the track factor for the prioritization and competing interests of the agency ways in favor of issuing the writ, because here the agency has developed the priorities. Granted, it was in response to this petition, as it's done in many other lawsuits. But therefore, under track factor four, petitioners won't be jumping the queue because EPA has done the prioritization. I just had another fact question. In the original 2017 appeal, that argument, the lawyers representing your clients pointed out, at least, that farmers were not replacing more toxic pesticides with CTP. They just were using both. And so the toxic ones are still being used, and the CTP is sort of just on top of it. Is that still the fact? There's no evidence that this replacement theory is actually coming to pass. Is there evidence to the contrary? It was argued to the contrary. Is there evidence to the contrary? Well, Your Honor, unfortunately, that kind of market evidence is not available to the public. First of all, the Federal Insecticide, Fungicide, or Denticide Act, Section 10B, creates limitations on trade secrets or commercial information. The Supreme Court has told us that we cannot get this information through FOIA, and that was in the Food Marketing Institute, the Argus Leader media phase. And even the interveners here who represent the registrants have not provided any evidence that CTP is replacing older chemicals. So that information is not available, so we can't say we don't. We've seen in other contexts that new active ingredients do tend to be additive rather than eliminating older insecticides. Thank you. We'll hear from the government now. May it please the Court, my name is Kamala Cashette, and I represent EPA. EPA recognizes the seriousness of not meeting its ESA obligations before registering cyanotroniliprole under FFRA. EPA has made great progress in recent years since this Court issued its underlying determination to bring its own into compliance with the ESA, including issuing revised methods for assessing risks to ESA-listed species from pesticides, and issuing its recent work plan. You've made no progress on CTP. It has made progress on CTP, Your Honor. Starting when? Earlier this year, so after the mandamus petition was filed. For CTP specifically, but all of the programmatic efforts that EPA has put into its ESA program have helped it with the CTP. Yeah, but in the last argument in 2017, someone from your, I'm going to call it you, or somebody else, but an attorney from your office stood up and said, oh, you know what, we're working out the interagency process, and we want to deal with the most toxic stuff first. So even back then, that was already the excuse in 2017, and then that's all the explanation we have, until they file the mandamus petition. So I appreciate what you're saying now, but it surely doesn't seem like the government took it all to heart, the remand order in this case and its obligation, until somebody tried to force it again. Your Honor, the problem EPA is trying to address is big, and it's somewhat unique. As for overall effort, EPA can't do everything all at once to fix all the pieces to this problem, and EPA does take this court's order and its ESA obligation seriously, and has taken many important steps that has led it towards ESA compliance generally and in this case. So let me ask you, you know, you suggest that you want to be able to set priorities without judicial interference, that the EPA should be allowed to move forward based on its expertise and other priorities. But CBD has made some fairly compelling arguments that it is in fact litigation that is setting the EPA's priorities, and things move up the list depending on whether there is a court-enforceable order. So I guess I'm wondering, what is the basis for how EPA is prioritizing moving forward with these different chemicals? Like, which goes to the front of the queue? Your Honor, the reality is that EPA is facing many lawsuits dealing with this pesticide issue, and so it puts court-enforceable deadlines first because it does not want to be held in contempt of court. By issuing this work plan earlier this year, that was part of EPA's movement towards moving away from having its schedule set by these court-ordered deadlines. Now trying to come up with a prioritization schedule, and has come up with a prioritization schedule, so that it can move away from these court-ordered deadlines. But isn't it, Council said, the Center said that what EPA is in fact prioritizing is complying with the court orders, right? You don't disagree with that, do you? No, Your Honor. Okay, and their argument is that unless we have a court order, we won't get priority. That's your whole argument. I mean, that's part of it. And, Your Honor, the fact that in this case, EPA set a deadline for itself to issue an order for cyanotronilacryl, or an effects determination for cyanotronilacryl without a court order, shows that EPA… Yeah, that was very effective in the Ninth Circuit, right? Didn't work there. I mean, EPA made a commitment there and blew right past it. Look, let me, I don't want to oversimplify this case, but this case, and I totally understand the problems the agency's facing. I get that. But from this court's point of view, this court has ruled already that the agency's in violation of the statute, and now for eight years. Now it's up to years. Number two, the agency's in violation for five years of our own order. And we know from the 20HA letter that EPA is not honoring other court orders as in the Ninth Circuit. So what is the, what possible, it seems to me like the only question for us is remedy. And for the life of me, I don't understand under the circumstances of this case, where you have both branches of government directing the agency. I don't understand what the argument would be saying that the petitioners don't have a clear and indisputable right to relief and no other adequate remedy. Do you have an argument to that? Can you make an argument? Yes, Your Honor. Good. That's what I need to hear. First, I'd like to address the 28J letter and the sulfoxaflora determination, because that situation is distinguishable from cyanotronilacrole. So petitioners mischaracterized what happened with sulfoxaflora. Let me just, let me just, I'm sorry to interrupt you, but your time is limited. Even without the Ninth Circuit, my question stands. Violating the statute for eight years, this court's order for five years. Just explain to me, forget the Ninth Circuit, I'll take your word for it that it's different. What's the argument that plaintiff hasn't satisfied easily the requirements for an order requiring compliance by the date the agency has suggested, September? And that, by using that date, there's no risk that this court would be upsetting the agency's own priority setting. The agency has itself picked September. What we would be saying is given the history of this case, violation of the statute in the court order, the court is ordering compliance by September 2020. I don't, I just don't see the argument against that. What is it? First of all, Your Honor, in the 2017 order, this court remanded the sanction of the decision without setting a deadline for EPA to act because. Right. And there, there hadn't, the agency wasn't violating the court order. Now it's five years in violation of a court order. It's a completely different situation. Your Honor, I respectfully disagree. EPA isn't violating the court's order here. It has set a reasonable deadline for it to complete. But it didn't, it didn't happen. Okay. I'm not going to argue with you, but is that your, is that the best argument? That the reason why, and you know, maybe you're right, but your argument is, look, there's no need to do it because the agency has now set its own deadline, right? That is a big part of our argument is that, yes. And what else? Give me the, what are the other parts of it? The other parts of it are the reasons for why we set that deadline. One of which was going back and taking a look at its program and refining the program so that it could issue effects determinations, like the one for cyanotroniliprole, more efficiently and more quickly, which is what EPA spent much of its time and effort doing for the past few years since this court's determination in the underlying cyanotroniliprole case. So EPA prioritized performing its pesticide program. And now it has set this deadline. It is doing, it is a reasonable deadline under these circumstances. And petitioners also don't dispute that because EPA has set its own deadline, that this court has found in other mandamus cases that EPA setting its own deadline bears great weight in denying mandamus. And in those cases, was there also a violation of the court order? In the in-ray court communications case, the first iteration of that, it was also brought against the court's order. It was a remand order. And in the first iteration of that case, yes, the court denied the petition for mandamus and gave the agency more time to complete the remand. And especially here. We paid the price for that because it wasn't met and we had to issue a mandamus in the next round. That is what happened in that case, Your Honor. But the agency there hadn't set a deadline for itself. It said that it was going to do it soon, but it hadn't committed to a hard deadline, which is what EPA has done. It didn't even do it soon. Excuse me? It didn't even do it soon in that case. That agency didn't, but EPA committed to doing it by September 23rd, 2023 here. And, Your Honor. I had a question about one of the reasons EPA gives for it taking so much time is that they're seeking public comment, which is not required by statute. But, of course, the effects determination is required by statute and required based on our remand order. So I guess I'm wondering, you know, I mean, EPA has committed itself to extra statutory process while it's continuing to fail in its ongoing responsibility to do the effects determination. So I'm wondering about that tradeoff. Because that is one of the justifications for the delay. Sure. So the notice and comment period is something that EPA finds very important for the process. It realizes that it's not necessary. But doing notice and comment lets it get input from stakeholders that it otherwise wouldn't be able to get, which generally during consultation stakeholders also don't get an opportunity to give these agencies input. So by having this notice and comment period, it's able to talk to stakeholders like petitioners and like interveners and get their feedback and come up with the strongest scientific document that it can. And the other hope that that is is that that will help with the consultation process and possibly shorten the consultation process because it's a stronger scientific document. So EPA finds a lot of value in that process, which is why it's asking for the September 2023 deadline here. Unless your honors have any questions. I do have a question. A few months ago in April, EPA issued its LAC wildlife protection and responsible pesticide use report, where it said on page four, I quote, over the next six years, so 2022 to 2028, existing court enforceable deadlines will require EPA to complete ESA reviews for 18 pesticides. The most the agency estimates it can handle during this period based on current capacity and process. Is CTP one of those 18? Because it did not have a court enforceable deadline. Sorry, this is from the handbook. Balancing wildlife protection and responsible pesticide use. How EPA's pesticide program will meet its Endangered Species Act obligations issued in April 2022. And what they say right there on page four is the most the agency estimates it can handle during the next six years. Is meeting court enforceable deadlines. And you already told us CTP didn't have a court enforceable deadline. And so I'm trying to reconcile how you're going to meet that when, in April, you all said the only thing the most you can estimate you can handle is court enforceable deadlines. Your Honor, there may have been an error in that document. But if you look, I think this is the handbook that you're referring to. If you flip to Appendix A, there is a schedule of all the pesticides that EPA has committed to deadlines for. And one of those is cyanotronilliferol. It's on page 67 of the document. So there may have been an error earlier on, but the handbook does. So you included that as a court enforceable deadline, even though it wasn't a court enforceable deadline? Or you're saying they were mistaken when they said, repeating it twice in the same sentence, that all they can do in the next eight years or in the next six years is meet court enforceable deadlines? Yes, Your Honor. That's a mistake because they had committed to the cyanotronilliferol decision. ESA's current priorities are driven almost entirely by litigation settlements and other court enforceable deadlines. And ongoing litigation settlement discussions for other lawsuits over dozens of additional pesticides will likely fill the agency's workload beyond 2030. That doesn't give me much comfort that 2023 is going to hold. Your Honors. I'm not sure it's a mistake, given all the statements that are all right there together. We understand the court's view on this. And while we are asking that the court and don't think that the court needs to set a court enforceable deadline here, if the court does, we just ask that it be for an effects determination by September 2023. And then no, I'm sorry. In the I'm sorry if I'm not saying is it Matusko declaration? Is that how you pass Matusko? As just I was pointing out on page 17, you say you're committed to the following schedule, but then drop a footnote immediately. It says some dates may change. EPA extends public comment period. Now, given that public comment is optional here anyhow. And given how late EPA is in complying both with the statute, getting close to a decade. And our court order close to half. Why can't the EPA just commit to not extending the public comment period and making clear when it issues this NPRM? This is our hard and fast deadline because we are under duty to a court. I don't know how I can trust anything when you say we don't have to do it. And then I'm going to drop a footnote that says I just said commit, but I don't really mean it. Because I might decide to do even more optional things. I think what EPA was trying to get at there is that there are some circumstances that are out of EPA's control that it has to account for, or it can't account for, but could force it to push off the deadline. What could force it if it's an optional notice and comment rulemaking? What could force it? EPA has no intentions of extending the notice. There's a footnote here reserving your ability to do it. So that's what I'm asking. I hear your response being some things happen that are beyond our control. But what could force it? And I get that if notice and comment was required, but it's not required here. So why can't you say it's optional? And so we are firmly committed to doing it on this timeframe, full stop, no extensions. Your Honor, what I can tell you is that EPA fully intends to hit the September 2023 deadline. You fully intend to now, and I'm not questioning that, and I appreciate your representation. But there are, as I pointed out, there's wiggle words in this declaration. And that, I think, gives them some indigestion, and could the Court as well. I understand, Your Honor. You know, like Judge Millett, I appreciate your representation. But, you know, given EPA's record here, you might be a lot safer saying, I have been assured by the agency that they may not want to give us your personal guarantee. Just a suggestion. I couldn't quite hear you, Your Honor. I think he's asking, can you – I was simply saying that, you know, I'd be careful about giving us a personal guarantee as counsel, given the record of your client. A safer statement would be, I have been assured by my agency that they will meet the September date. I'm going to assume that's what you meant to say. It is, Your Honor. Yes, okay. Sorry, you're telling me the EPA has told you, assured you that they will meet that deadline. That is their number one priority. No, no, no, that's not the same thing. Well, Your Honor, I can't predict the future. EPA can't predict the future. There could be a lapse in government appropriations. There are circumstances here that are out of EPA's control. So it has to account for that in this declaration. And that is exactly why the center wants an enforceable order. That's what this case is all about. Do you have a sense of how many pesticides must still go through the ESA process that are not subject to some ongoing litigation? I mean, I know there's like a long backlog of registered pesticides for which EPA has to do this process. Are all of them being litigated or are only a handful of them being litigated? I understand there's a fair amount of litigation. I'm wondering if you just have some sense of that. I can't give you an exact number, but I can tell you it is only a handful of the pesticides that are being litigated right now. Great. Thank you very much. We'll hear from the intervener. Good morning, Your Honors. Thomas Lorenzen here on behalf of Respondent Interveners, Syngenta Crop Protection, and FMC Corporation. As I understand, the Council for Petitioners today has conceded that they are no longer seeking conditional vacature of the registration of Cyanotramilochrome if EPA does not meet its deadline. I'm not sure that I have much to affirmatively argue to you unless you have questions. Deciding remedies on mandamus, is this court bound by parties' representations? I mean, last time they didn't argue for vacature either, but we went through a whole vacature analysis, in our opinion, nonetheless. I understand. Do we have to do it on our own anyhow? I don't think you do, given that they're not seeking it. It's within the court's discretion to order it. Right. But I think it would be unwise to do so, and I can tell you why. I want to back up. I'm sure you have arguments on that front. In our prior opinion, even though petitioners, it wasn't a mandamus petition, it was regular, EPA petitioners didn't argue, at least by argument again, they said they weren't seeking vacature. But nonetheless, our opinion went through a whole analysis on whether vacature, and so in deciding, now we're at mandamus, which is a different creature altogether, is the determination as to what the appropriate remedy is bound by what parties argue or don't argue? Well, I think, Your Honors, we can go through the analysis, and I don't think that anything has changed in terms of whether vacature. I'm sorry, we can go through the analysis? You can go through the analysis in your opinion, and I think you'll reach the same conclusion that nothing has changed. I'm just trying to understand, do we need to? Is that something the court has to do? My question is more kind of like, is it our obligation as part of mandamus, since the mandamus factors are generally treated as jurisprudence? No, because mandamus is about setting a deadline for the agency to act. They're not seeking immediate vacature. The question that they've asked the court about, as I understand it, that we were here to address today, is whether the court should order vacature conditionally if EPA doesn't meet its September 2023 deadline. Now, first, as counsel has argued this morning for the government, I don't think that mandamus is required here either. I would suggest that there might be a compromise solution here, which is that the court retains jurisdiction and orders periodic status reports between now and next September to ensure the agency remains on track. As Judge Tatel suggested earlier, if it appears the agency is not on track, the court can entertain briefing then as to what ought to happen. If we are looking at, you know, a two- to four-week lapse of funding in the federal government, it seems hard to put the court to a mandatory deadline when there is such a lapse, and then to go further and potentially conditionally vacate the registration of Santra Nuloprol in such an event would be not only, I think, contrary to the allied signal factors, which asks the court to examine whether, after its full analysis, the agency might arrive at the same place, and CTP is a reduced-risk pesticide, as EPA concluded back in 2014, and as this court reaffirmed in its decision remanding to EPA. So we might end up in the same place. This court didn't make any fact-finding. It accepted the agency's conclusion there. But what about this concern that was voiced in the prior argument and I asked about, and that is that CTP isn't used as replacement. It's just used on top of or in addition to those already more toxic. Well, and I think you are actually driving us to this very important point. It's not that it's used on top of. It's that it's used as part of integrated pest management. Pests develop resistance to pesticides over time and with the use of a pesticide. The way to prevent that from happening is by rotating the use of the pesticides. Santra Nuloprol is a reduced-risk pesticide on its own, whether it's being rotated with these others or not, but it's also a critical tool in the toolbox of crop growers preventing resistance from developing in these pests. Take Santra Nuloprol out of that toolbox. You make, first of all, you make the growers more reliant on those other pesticides. So CTP may well not, right, well, don't know because if the problem is the resistance, it doesn't do any point to pouring more on. So the predicate was, at least in our prior decision, that, wow, if this is vacated, they're going to replace it with these more toxic ones. But then it turns out the more toxic ones are being used anyhow. Then that harm starts to slip away. Your statement that, well, then they'll just use more of it doesn't make sense because you just said the reason they want something else is because of resistance. Right, but what happens instead, yes, the pests will develop more resistance to those other pesticides more quickly. And what you will end up with is damage to our nation's crop supply. I mean, if we're talking about something like citrus green, it's actually not. It's the same thing because all of the pesticides become less effective as pests develop resistance. Taking CTP out of the mix increases the likelihood that they become resistant earlier. And now you're talking about, you know, having to remove citrus trees for seven miles. It takes eight years to grow them back. You're talking about effects on blueberry crops and other things. One other thing that I want to note, you, Your Honors, asked the petitioners this morning whether anything has changed, whether there's more information about the effects of CTP on listed species. And I would just refer, Your Honors, to paragraph 17 of the declaration of Duane Moore that's attached to our intervener's brief, where we note that there have been very few instances reported for cyanotronillacool, especially given the number of years the pesticides have been used, its very high adoption rate, and there are no reported aquatic incidents, no reported wildlife. So the evidence over the years has actually borne out. This is a reduced-risk pesticide as the Registrar's Candidate. This is actually what you've been saying. It's actually quite interesting. I hadn't understood the point about rotating pesticides. And what you just said about current data is also interesting. But isn't it all premature at this point from this court's perspective? What will happen in September, I assume, is the agency will either make an effects determination or it won't. Those are the two options, right? So if it doesn't, these issues are off the table, correct? There won't be a threat to CTP's registration unless the effects decision is challenged. Let me just finish. On the other hand, if they do make an effects determination, then the agency and the center and maybe this court will have to wrestle with these really interesting questions, but not now. Agreed. Agreed. And that is why we were here this morning, Your Honors, to address you because of the request in their briefing for that automatic vacature. And that's now off the table. And that is off the table. And if that is, in fact, the case that Judge Millett, you asked, do we have to engage in that analysis anyway? You may wish to engage in it. But what I have tried to explain this morning is that nothing has changed from the analysis in 2017 regarding any risks posed by cyanotronilipole. It is still a reduced risk pesticide. As the declaration of Duane Moore demonstrates, there have been no reported incidents with cyanotronilipole. And it is better than these older, more toxic chemicals that EPA is also using. That are still being used. That are also being used. If Your Honors have no more questions, thank you. Okay, Ms. Parent, I'll give you two minutes for rebuttal. Thank you, Your Honors. I want to address the two excuses that EPA uses this programmatic approach that it's been undertaking for the last 16 years. These would fall under Track Factor 2. That the delay here is unreasonable in the overall context of the Endangered Species Act. First, it looks for a timetable. As the Court clearly held, it has to happen before the decision. But it did not. And while EPA claims to have been refining its program for 16 years to take a programmatic approach, that cannot be an excuse for failure to comply when there's a specific agency action, like cyanotronilipole registration, that triggers the ESA Section 7 duties. Moreover, the second excuse that falls under this Track Factor 2 is that the agencies claim that they need to refine, well, first they say it's complex, and that they need to refine their approach to look at these endangered species as opposed to other non-target species. And with respect to that it's complex, the Petusco Declaration, Paragraph 17B, said that they listed out the eight steps they had to undertake and had already completed six of them in 2013. The EPA just simply decided not to comply. It also runs afoul of the Endangered Species Act Best Available Science Standard. The agency is not supposed to further refine and gather more information and gather more information. They're supposed to protect the species before, even if there is some scientific uncertainty. I'd like to point out two cases that Judge Tatel, you asked about. What were those remand orders? And, of course, Judge Millett, you commented that in a court communications, it came back to bite them. Or maybe the court, I don't know. In any case, in that 2005 court communications decision, it had only been three years since the remand order. The other case that the EPA cites is INRI Bechtel. They characterize it as having been four years since the remand order. It was actually three years and two months. Here we have now five years since the remand order. In the court communications, we issued a conditional vacater. Correct, Your Honor. Yes. This replacement idea, if you look at intervener's brief and the Moore Declaration, it only discusses, quote, potential replacement pesticides, unquote, with no hard evidence that this is actually happening. Finally, if the court were to issue the September 2023 deadline as a court enforceable order, this discussion about the only thing I heard was, well, what if there's a lapse in appropriations? Certainly, either the court can account for that in its order if that were to come to pass, or certainly EPA and I don't believe petitioners would oppose modification of that deadline if, in fact, there were a six-week government check. In the end, Your Honor, the track factor one, the rule of reason, we've got eight years since the duty attached under the Endangered Species Act, five years since the remand order. We need to have that first step of looking at the effects and then decide what goes next. Thank you. Thank you. The case is submitted.
judges: Millett, Rao, Tatel